# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| GARY DAVID HAUCK and | ) | 10-30894-SBB |
| BRENDA KAY HAUCK, | ) | Chapter 7 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| STEPHANIE M. MARTIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| GARY DAVID HAUCK and | ) | 10-01888-SBB |
| BRENDA KAY HAUCK, | ) | |
| Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court for consideration of:

(1) Stephanie M. Martin's (the "Plaintiff") Motion for Summary Judgment (the "Plaintiff's Motion for Summary Judgment");[1]
(2) the Defendants' Response thereto;[2]
(3) the Plaintiff's Reply thereto;[3] and
(4) Gary David Hauck's and Brenda Kay Hauck's (the "Defendants") Cross-Motion for Summary Judgment (the "Defendants' Cross-Motion for Summary Judgment"),[4] including the Defendants' Affidavit.[5]

## I.   Summary

This adversary proceeding concerns the dischargeability of a debt arising out of a stipulation (the "Stipulation") to the entry of a judgment (the "Stipulated Judgment") against the Defendants in the amount of $200,000.00 for "Deceit Based on Fraud ... and Civil Theft under

---

[1]   Docket Nos. 34 and 45.

[2]   Docket No. 43.

[3]   Docket No. 44.

[4]   Docket No. 36.  The Plaintiff did not file a response to the Cross-Motion.

[5]   Docket No. 37.

[Colo. Rev. Stat.] § 18-4-401…as contained in Plaintiff's First Amended Complaint and Jury Demand…"**6**

Plaintiff asserts that the Stipulation and Stipulated Judgment whereby the parties agreed that the Stipulated Judgment would enter on the claims for "Deceit Based on Fraud" and "Civil Theft" establishes that the obligation is nondischargeable under 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. § 523(a)(4).

The Defendants acknowledge that the Stipulation and Stipulated Judgment *did enter against them* on the claims for "Deceit Based on Fraud" and "Civil Theft under COLO. REV. STAT. § 18-4-401." However, the Defendants' deny that the Stipulated Judgment should be binding and deemed nondischargeable under section 523 of the Bankruptcy Code. Further, the Defendants assert that they have little or no memory of any part of the mediation including any discussion about the Stipulation and Stipulated Judgment entering specifically on these two claims.

A fundamental question before the Court is whether the *choice* to agree to stipulate to judgment on two specific claims for relief–as contained in the state court complaint, wherein five claims for relief were sought–constitutes the parties' intent to be bound by the terms of the agreement in any subsequent actions.

If the Court construes the Stipulation as one in which the parties knew and understood, or intended, it to be binding and enforceable in the future, then the doctrine of issue preclusion (collateral estoppel) will bar the Court from re-litigating the issue. If, however, the Court cannot construe the Stipulation as such then the doctrine of issue preclusion does not bar this Court from addressing the issue on its merits. Based upon the facts of this case and for the reasons stated herein, this Court concludes that the parties *did* intend to be bound by the terms of the agreement in subsequent actions and that issue preclusion prevents this Court relitigating these matters.

## II.     Factual Background

### A.     Events Leading Up to State Court Litigation

The Plaintiff was the owner of record of two parcels of real property, including a single-family home, known by street and number as 5821 West 7th Avenue, Lakewood, Colorado (the "Property"). In 2006, the Plaintiff, who was then sixty years old, and had an annual income of $27,000, was experiencing difficulties in making payments on her adjustable rate mortgage on the Property, which had risen to approximately $2,400 per month.

The Plaintiff consulted the Defendants regarding her financial situation. The Defendants, both real estate agents, told the Plaintiff she could not qualify for a traditional mortgage loan and

---

6     The Plaintiff's Exhibits D and E.

2

offered to purchase the Property from her in exchange for rent payments from the Plaintiff. The Defendants also offered the Plaintiff the option to repurchase the Property at a later date.

In September 2006, the Plaintiff and the Defendant, Gary D. Hauck, entered into a contract whereby:

(1) the Defendant, Gary D. Hauck, purchased the Property for $430,000,
(2) the Plaintiff paid the closing costs up to $12,000.00 and a $20,000 fee to the Defendant, Gary D. Hauck, and
(3) the Plaintiff gave the Defendant, Gary D. Hauck, her boat, and
(4) the contract provided that the Plaintiff would loan $138,000 to the Defendant, Gary D. Hauck, at a rate of 4%, with the remaining portion of the sale price financed by the Defendant, Gary D. Hauck.[7] The contract stated that the loan would be secured by a second deed of trust on the property. The promissory note was to have a term of 40 years.

The closing on the sale of the Property was held on October 3, 2006. The settlement statement prepared prior to closing reflected that the buyers, who now included Defendant Brenda K. Hauck, had obtained a new loan in the amount of $292,000.00 from Mortgage Lenders Network USA, Inc., of Middletown, Connecticut ("First Lender"). The settlement statement also reflected that the second mortgage would be carried by Plaintiff in the amount of $138,000.00.

The $292,000.00 in financing obtained by Defendants was in the form of an adjustable rate mortgage with an initial rate of 8.6% with a monthly payment starting at $2,584.76, an amount greater than Plaintiff's previous mortgage payment.

Defendants took title to the Plaintiff's Property by way of a warranty deed dated October 2, 2006.

On October 3, 2006, the Defendants prepared a rental agreement pursuant to which the Plaintiff's mother, who was receiving $520.00 per month in housing assistance, authorized her housing assistance to be paid directly to the Defendants and to be applied to the mortgage payment. After deducting the $520.00 payment from the $2,584.76 monthly mortgage payment, the rental agreement called for the Plaintiff to pay the remaining $2,064.76 monthly rent. The Plaintiff did not sign the rental agreement but made payments pursuant to the agreement. The Defendants prepared an addendum to the rental agreement which purported to provide the Plaintiff with an option to repurchase the Property for $320,000 but was signed by only one of the Defendants.

---

[7] The $138,000 financing by the Plaintiff and the $292,000 financing by the Defendants total the purchase price of $430,000.

3

At the time that the Defendants took title to the Property by way of a warranty deed dated October 2, 2006, the Defendants assured the Plaintiff she remained the true owner of the Property and should her financial condition fail to improve, the Defendants could sell the Property and pay the Plaintiff the net proceeds of the sale, less the $20,000 fee. This was not reduced to writing. After closing, the Defendants instructed the Plaintiff to sign the $138,000 note "paid in full" because "it had to be done," which she did although she alleged the Defendants had not paid any portion on the note.[8] The Plaintiff alleges the Defendants forced her to sign the release. The Defendants failed to make mortgage payments on the Property despite the Plaintiff paying monthly rent. The Property was foreclosed by the First Lender.

### B. The State Court Litigation, Bankruptcy Filing, and the Motions Presently before the Court

On July 20, 2007, Plaintiff sued Defendants by filing a Complaint ("State Court Action") in the District Court for Jefferson County, Colorado ("State Court").

On December 21, 2007, Plaintiff filed her First Amended Complaint in the State Court Action. Specifically, Plaintiff's First Amended Complaint and Jury Demand sought five claims for relief:

(1) The First Claim for Relief sought judgment for extreme and outrageous conduct by the Defendants against the Plaintiff.
(2) The Second Claim for Relief sought judgment for deceit based on fraud.
(3) The Third Claim for Relief sought judgment for civil conspiracy.
(4) The Fourth Claim for Relief sought judgment for civil theft under COLO.REV.STAT. §18-4-401.
(5) The Fifth Claim for Relief sought the imposition of a constructive trust on the Property.

Almost two-years into the State Court Action, on March 25, 2009, Plaintiff filed a Motion for Entry of Default Judgment. On April 30, 2009, the State Court entered judgment in favor of the Plaintiff and against Defendants, jointly and severally, in the amount of $516,520.00.

On July 14, 2009, the Defendants filed a Motion to Vacate Judgment and Set Aside Default in the State Court Action. On August 3, 2009, the Court in the State Action entered an Order Granting Defendants' Motion. On August 12, 2009 (two-years after the filing of the original Complaint), the Defendants filed their Answer in the State Court Action. The State Court Action was subsequently set for a five-day jury trial commencing on August 16, 2010.

---

[8] This is the basis for the Plaintiff's allegations that the Defendants knowingly and willingly obtained, by false pretenses, the Plaintiff's significant equity in the Property.

On May 6, 2010, *Plaintiff and Defendants and each of their respective legal counsel* attended a settlement conference presided over by a retired Colorado District Court Judge, the Honorable Kim H. Goldberger. At the conclusion of the settlement conference, on May 6, 2010, the Plaintiff and the Defendants reached an agreement stipulating to the entry of a judgment in the amount of $200,000. Pursuant to the Stipulation, judgment was to enter for the Plaintiff against the Defendants jointly and severally, based only on - *expressly* - "deceit based on fraud (2nd Claim for Relief) and civil theft under C.R.S. § 18-4-401 (4th Claim for Relief)." The Judgment was *not* to be entered based on the other claims for relief, that is: the First Claim for Relief for extreme and outrageous conduct; the Third Claim for Relief for civil conspiracy; and the Fifth Claim for Relief seeking imposition of a constructive trust on the Property.

For context in this decision, the Plaintiff asserted in her Second Claim for Relief that:

> 28. Defendants, and each of them, made representations of a past or present fact(s).
> 29. The fact(s) was material.
> 30. At the time the representation(s) was made, Defendants, and each of them, knew the representation was false.
> 31. Defendants made the representation(s) with the intent that Plaintiff would rely on the representation(s).
> 32. Plaintiff relied upon the representation(s).
> 33. Plaintiff's reliance was justified.
> 34. Such reliance has caused injuries and damages to Plaintiff.[9]

The Plaintiff further asserted in her Fourth Claim for Relief as contained in the State Court Action the following:

> 41. Defendants, and each of them, knowingly obtained title to, and exercised control over, the Property and the Plaintiff's equity in the Property by deception, and intended to permanently deprive Plaintiff of the use or benefit of the Property and Plaintiff's equity in the Property.
> 42. Pursuant to C.R.S. § 18-4-405, Plaintiff is entitled to recover from the Defendants three times her actual damages, costs of this action, and reasonable attorney fees.[10]

---

[9] First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 6.

[10] First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 7.

The State Court entered its Stipulated Judgment approving the Stipulation on May 14, 2010, but the Stipulated Judgment was made effective May 6, 2010. The Stipulated Judgment provided that:

> The Court, having reviewed the Parties' Stipulation, hereby enters judgment against Defendants Gary D. Hauck and Brenda K. Hauck, jointly and severally, and in favor of Plaintiff Stephanie M. Martin in the amount of $200,000, said entry of judgment being based on Plaintiff's 2nd Claim for Relief, **Deceit Based on Fraud**, and 4th Claim for Relief, **Civil Theft pursuant to C..R.S. § 18-4-401**, as stated in the Plaintiff's First Amended Complaint and Jury Demand, filed December 21, 2007.[11]

On August 17, 2010, the Defendants filed for bankruptcy relief under Chapter 7.

The Plaintiff filed her Complaint ("Complaint") commencing this adversary proceeding on November 11, 2010. In her Complaint, Plaintiff seeks a determination that the debt arising from the Stipulated Judgment should be determined nondischargeable on the basis of collateral estoppel. The Defendants, by their *pro se* Amended Answer to the Complaint, denied *most* of the factual substantive and material assertions of the Complaint. The affirmative defenses raised by the Defendants included: (1) Plaintiff's failure to state a claim upon which relief could be granted; (2) equitable doctrines of estoppel, waiver and laches; (3) Plaintiff's failure to mitigate damages; (4) Plaintiff's failure to act or Plaintiff's consent to the Defendants' acts; (5) Plaintiff's damages are remote, speculative and conjectural; (6) Plaintiff's unclean hands; (7) Plaintiff's assumption of risk; (8) Plaintiff's claims are barred by duress on her "importuning" Defendants; (9) Plaintiff's claims are barred by failure of consideration and contributory negligence; and (10) Plaintiff's failure to comply with conditions precedent.

On August 15, 2011, the Plaintiff filed her Motion for Summary Judgment,[12] in which the Plaintiff argued collateral estoppel prevents relitigation of her claims under section 523(a)(2)(A) and (a)(4). Specifically, the Plaintiff alleged that the Defendants willingly and knowingly entered into the Stipulated Judgment as to the Plaintiff's claims of deceit based on fraud and civil theft, the elements of which the Plaintiff argued were actually litigated and conclusively determined. Those issues, the Plaintiff argues, render the entire debt of the Stipulated Judgment nondischargeable.

The Defendants argue in their Response and Cross-Motion for Summary Judgment that:

---

[11] Emphasis in original.

[12] The Plaintiff did not comply with all provisions of Local Bankruptcy Rule 7056-1. However, the issues are not complicated and the Court considers the Plaintiff's Factual Background as undisputed facts based on the authenticity of the Plaintiff's exhibits, a determination with which the Defendant concedes in their Response ¶ C.3 ("the [Defendants] do not dispute the authenticity of any of the documents attached as exhibits.").

      (1)      the issues sought to be precluded were not actually litigated under the Stipulated Judgment and

      (2)      the Defendants never intended the Stipulated Judgment to resolve the particular issues as to future proceedings.

### III. Issues

There are two central issues before the Court:

      (A)      Whether, under Colorado law, issue preclusion or claim preclusion bars relitigation of the issues contained in the Complaint.

      (B)      Whether the *choice* to agree to stipulate to judgment on just two specific and exclusive claims for relief as contained in Complaint in the State Court Action, wherein five claims for relief were sought, can constitute the parties' intent to be bound by the terms of the agreement in any subsequent actions.

In summary and as discussed below, this Court concludes that under the specific facts of this case issue preclusion bars relitigation of this matter because: (1) the issue to be precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.[13]

On the second issue, the Court concludes that, yes, a knowing and deliberate agreement and stipulated judgment to the two specific and exclusive claims for relief in prior litigation can constitute the parties' intent to be bound by the terms of the agreement. And, with respect to the Stipulation and corresponding Stipulated Judgment in the State Court Action, the parties, by the specification of the bases for relief upon which the State Court Judgment was to enter manifested their intent to resolve their dispute based on culpability admitted on those two select and exclusive claims alone, and judgment entered accordingly. Moreover, unlike many other agreements, which contain "hold harmless" provisions or a statement that the agreement does not constitute an admission or confession of liability, this agreement specifies that the Defendants admit that they committed "deceit based on fraud (2nd Claim for Relief) and civil theft under C.R.S. § 18-4-401 (4th Claim for Relief)."[14]

---

[13]     *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999) (quoting *Michaelson v. Michaelson*, 884 P.2d 695, 700-01 (Colo. 1994)).

[14]     A troubling note in this matter is that, in Defendants' Cross-Motion for Summary Judgment, they cite to *Chilcoat v. Minor (In re Minor)*, 115 B.R. 690 (D. Colo. 1990) for the proposition that a general statement in the law

(continued...)

## IV. Discussion

### A. Standard for Summary Judgment

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[15]

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.[16] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party must carry the burden of proof.[17] The nonmoving party may not rest on its pleadings, but must set forth specific facts.[18] When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.[19]

The Plaintiff submits there is no genuine issue of material fact as to her claims pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).[20] This Court agrees.

---

[14](...continued) is that consent to judgment on fraud based claims does not constitute an admission of liability for fraud. In the *Minor* decision, the parties had a provision in the judgment that "clearly indicated the parties intent ... reciting that both parties 'agree that this judgment is not an admission or confession that Defendant has committed securities fraud or common law fraud, but is merely for the purpose of incorporating the settlement of the parties in lieu of litigation of the securities fraud and common law fraud.'" *Id.,* at 697.

[15] *See* FED.R.CIV.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[17] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[18] *Id.*

[19] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288 (10th Cir. 1991).

[20] The Plaintiff does not move for summary judgment on her claim under section 523(a)(6) of the Bankruptcy Code.

### B. The Distinction Between Claim Preclusion and Issue Preclusion

#### 1. Terminology

As the Supreme Court of Colorado has stated:

> As an initial matter, we clarify the terminology used in our analysis. This Court uses the terms "claim preclusion" and "issue preclusion" rather than "res judicata" and "collateral estoppel." *See Farmers High Line Canal and Reservoir Co. v. City of Golden,* 975 P.2d 189, 196 n. 11 (Colo. 1999). In prior opinions, we have used the phrases interchangeably, however as noted by the United States Supreme Court in *Migra v. Warren City Sch. Dist. Bd. Of Educ.,* 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), use of the phrases "res judicata" and "collateral estoppel" can lead to confusion because "res judicata is commonly used as an overarching label for both claim and issue preclusion. *Id.*[21]

A determination of whether claim preclusion or issue preclusion should be applied to a state court judgment requires that this Court look to the preclusion law of the state—here, Colorado—where the judgment was entered.[22] Indeed, "the full faith and credit statute, 28 U.S.C. § 1738, 'directs a federal court to refer to the preclusion law of the State in which judgment was rendered.'"[23] For the purposes of this opinion, the Court will also use the terms claim preclusion and issue preclusion so as to conform with the Supreme Court of Colorado's terminology.

#### 2. Claim Preclusion

"Claim preclusion works to preclude relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not."[24] Claim preclusion is defined as an "affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit."[25]

---

[21] *Argus Real Estate, Inc. v. E-470 Public Highway Authority,* 109 P.3d 604, 608 (Colo. 2005).

[22] *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332 (1985).

[23] *Nichols v. Board of County Commissioners of the County of La Plata, Colorado*, 506 F.3d 962, 967 (10th Cir. 2007).

[24] *Argus Real Estate,* 109 P.3d at 608.

[25] BLACK'S LAW DICTIONARY 1425 (9th ed. 2009)(under the term "res judicata"). Generally,

(continued...)

> [Claim preclusion] ensures the finality of decisions. Under [claim preclusion], "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). It prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329, *rehearing denied,* 309 U.S. 695, 60 S.Ct. 581, 84 L.Ed. 1035 (1940). "[Claim preclusion] thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). "Because [claim preclusion] may govern grounds and defenses not previously litigated, ... it blockades unexplored paths that may lead to truth ... It therefore is to be invoked only after careful inquiry." *Id.,* at 132, 99 S.Ct. at 2210).
>
> [Claim preclusion] stands for the proposition that "a judgment rendered by a court of competent jurisdiction upon a question involved in one suit is conclusive upon that question in any subsequent litigation between the same parties. A judgment may be erroneous in law, but if it becomes final it is still binding and conclusive as between the parties upon the question involved." *Goldsmith v. M. Jackman & Sons, Inc.,* 327 F.2d 184, 185 (10th Cir. 1964).[26]

Under claim preclusion, for a claim in a second judicial proceeding to be precluded by the previous judgment, there must exist:

(1)  finality of the first judgment,
(2)  identity of subject matter,
(3)  identity of claims for relief, and

---

[25](...continued)
> The principal distinction between claim preclusion and issue preclusion is ... that the former forecloses litigation of matters that have never been litigated. This makes it important to know the dimensions of the 'claim' that is foreclosed by bringing the first action, but unfortunately no precise definition is possible." Charles Alan Wright, *The Law of Federal Courts* § 100A, at 723 (5th ed. 1994)

BLACK'S LAW DICTIONARY 263.

[26]  *In re Faires,* 123 B.R. 397, 401 (Bankr.D.Colo. 1991).

>   (4)   identity or privity between parties to the actions.[27]

In this instance, three of the elements are met for claim preclusion. First, the Stipulation and State Court Judgment are final. Second, the subject matter is distinctly identified and specifically designated. Third, the parties are the same as in the prior State Court Action.

Arguably, because of the language of the State Court Complaint as contained in the Second and Fourth Claims for Relief–which use virtually identical verbiage as contained in 11 U.S.C. § 523(a)(2)(A) and (4)–claim preclusion may be applicable. That is, the claims for relief, which are articulated in the Plaintiff's Complaint, distinctly and specifically embody the same content and character of 11 U.S.C. § 523(a)(2)(A) and (4). Nevertheless, courts generally hold that claim preclusion cannot bar relitigation in the context of dischargeability proceedings and that only issue preclusion may be applicable.[28]

---

[27] *Argus Real Estate,* 109 P.3d at 608.

[28] *See, e.g., Goss v. Goss,* 722 F.2d 599 (10th Cir. 1983). The Tenth Circuit noted that:

> Courts have disagreed on whether collateral estoppel should apply to dischargeability determinations involving a bankruptcy court's exclusive jurisdiction. Where a state court has jurisdiction to determine dischargeability concurrent with that of the bankruptcy court, however, collateral estoppel should be applied. This result is consistent with the congressional design in giving bankruptcy courts exclusive jurisdiction to determine the dischargeability of certain debts, but not others.

As other cases have noted, the principle of claim preclusion generally does not apply to actions concerning dischargeability of debt. "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo.1999)(quoting Restatement (Second) of Judgments 6 (1982)). "'[Claim preclusion] not only bars issues actually decided, but also any issues that should have been raised in the first proceeding but were not.'" *Id.* (quoting *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 830 (Colo. 1991)).

Although the general rule of claim preclusion would operate to bar all of Plaintiff's state-law claims, Plaintiff's requests for a determination of nondischargeability under 11 U.S.C. 523 are not barred. In *Brown v. Felsen*, 442 U.S. 127 (1979), the United States Supreme Court determined that "neither the interests served by [claim preclusion], the process of orderly adjudication in the state courts, nor the policies of the Bankruptcy Act, would be well served by foreclosing a creditor in a bankruptcy proceeding from submitting additional evidence" to prove that a debt was nondischargeable. 442 U.S. at 132. In nondischargeability proceedings in the bankruptcy court, the dischargeability claim arises, not to dispute the validity of the underlying debt, but rather "to meet . . . the new defense of bankruptcy which [the debtor] has interposed between [the creditor] and the sum determined to be due him." *Id.* at 133. According to the Court, in asserting dischargeability, the *debtor*

> has upset the repose that would justify treating the prior state judgment as final, and it would hardly promote confidence in judgments to prevent [the creditor-plaintiff] from meeting the debtor-defendant's new initiative. Accordingly, the Court established the principle that "a bankruptcy court is not confined to a review of the judgment and record

(continued...)

3. Issue Preclusion

"[I]ssue preclusion, is a judicially created, equitable doctrine that operates to bar relitigation of an issue that has been finally decided by a court in a prior action."[29] Issue preclusion, where applicable, precludes relitigation of issues decided by another court. Issue preclusion may preclude relitigation of the factual bases for a non-dischargeability claim if elements of the claim for non-dischargeability are identical to elements actually litigated and determined in the prior action.[30]

"Issue preclusion applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, [such that] the determination is conclusive in the subsequent action between the parties, whether on the same or a different claim." The Colorado Supreme Court has held that:

> Issue preclusion bars relitigation of an issue if: (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. Only when each of these elements has been satisfied are the equitable purposes of the doctrine furthered by issue preclusion.[31]

Under Colorado law,

---

[28](...continued)
     in the prior state-court proceedings when considering the dischargeability of debt."

*Id.* at 138-39 (1979).

   Claims relating to dischargeability only arise in the context of a bankruptcy proceeding. Thus, claims with respect to dischargeability of a debt are unique to bankruptcy and are raised for the first time in response to a debtor's attempt to discharge debts–which happens for the first time in bankruptcy. In the absence of a bankruptcy proceeding, the creditor would never have had any reason to establish the elements required to defeat discharge. Consequently, claim preclusion cannot bar relitigation from a state court disposition of a matter in the context of the discharge of obligations brought forth only by the existence of a bankruptcy proceeding.

[29]   *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo. 2001) (citations omitted); *see also,* 4 *Collier on Bankruptcy* ¶ 523.06, at 523-22 (Alan N. Resnick and Henry J. Sommer ed., 16th ed. Rev. 2009).

[30]   *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658 (1991).

[31]   *Sunny Acres,* 25 P.3d at 47 (citations omitted).

> A final judgment determines the rights of the parties involved. "To constitute a final judgment the trial court's ruling must dispose of the entire litigation on the merits, and leave the court nothing to do but execute the judgment." When a default has been entered but damages have not been proven, there can be no final judgment.[32]

As a general rule, "a judgment is final and therefore appealable if it disposes of the entire litigation on its merits, leaving nothing for the court to do but execute the judgment."[33]

In this case, the parties agreed to specific language in their Stipulation, whereby they agreed and understood that judgment was to enter for the Plaintiff against the Defendants jointly and severally, based only and specifically on "deceit based on fraud (2nd Claim for Relief) and civil theft under C.R.S. § 18-4-401 (4th Claim for Relief)." Moreover, the State Court entered a specific Judgment, which provided:

> The Court, having reviewed the Parties' Stipulation, hereby enters judgment against Defendants Gary D. Hauck and Brenda K. Hauck, jointly and severally, and in favor of Plaintiff Stephanie M. Martin in the amount of $200,000, said entry of judgment being based on Plaintiff's 2nd Claim for Relief, **Deceit Based on Fraud**, and 4th Claim for Relief, **Civil Theft pursuant to C..R.S. § 18-4-401**, as stated in the Plaintiff's First Amended Complaint and Jury Demand, filed December 21, 2007.[34]

    4.        Issue Preclusion and 11 U.S.C. § 523(a)(2)(A)

Pursuant to 11 U.S.C. § 523(a)(2)(A):

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
> (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>     (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...

---

[32] *Sumler v. District Court, City and County of Denver,* 889 P.2d 50, 55 (Colo. 1995) (en banc).

[33] *Kempter v. Hurd,* 713 P.2d 1274 (Colo. 1986) (en banc).

[34] Emphasis in original.

To prevail under 11 U.S.C. § 523(a)(2)(A), Plaintiff must carry the burden of proof and demonstrate that:

    (1)    The debtor made a false representation;
    (2)    The debtor made the representation with the intent to deceive the creditor;
    (3)    The creditor relied on the representation;
    (4)    The creditor's reliance was justifiable;
    (5)    The debtor's representations caused the creditor to sustain a loss.[35]

Defendants, by agreeing to the specific terms of the Stipulation and entry of the Stipulated Judgment, with the assistance of able counsel and with the guidance of a retired Colorado State Court Judge serving of a mediator, admitted that the components of the Second Claim for Relief as contained in the State Court Complaint:

    (1)    At the time the representation(s) was (were) made, Defendants, and each of them, knew the representation(s) was (were) false.[36]
    (2)    Defendants made the representation(s) with the intent that Plaintiff would rely on the representation(s).[37]
    (3)    Plaintiff relied upon the representation(s).[38]
    (4)    Plaintiff's reliance was justified.[39]
    (5)    Such reliance caused injuries and damages to Plaintiff.[40]

Each of the elements of 11 U.S.C. § 523(a)(2)(A) have been met by the Defendants' admission with respect to the Second Claim for Relief as contained in the State Court Complaint and as contained in the Stipulation and as incorporated in the Stipulated Judgment.

---

[35] *In re Kukuk,* 225 B.R. 778, 784 (10th Cir. BAP 1998); *Wolf v. McGuire (In re McGuire),* 284 B.R. 481 (Bankr.D.Colo. 2002).

[36] First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 6, ¶30.

[37] First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 6, ¶31.

[38] First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 6, ¶32.

[39] First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 6, ¶33.

[40] First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 6, ¶34.

     5.     <u>Issue Preclusion and 11 U.S.C. § 523(a)(4)</u>

In addition to 11 U.S.C. § 523(a)(2)(A), the Plaintiff here requests that this Court determine that relitigation of this matter should be precluded with respect to a determination of nondischargeability under 11 U.S.C. § 523(a)(4). Plaintiff asserts that this proceeding is identical to the issue actually determined in the prior proceeding—that is, whether the Defendants' admission to civil theft pursuant to COLO.REV.STAT. § 18-4-405 satisfies the requirement under 11 U.S.C. § 523(a)(4).[41]

Under 11 U.S.C. § 523(a)(4), a debt may be determined nondischareable "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny..." The focus in this adversary proceeding is on the "embezzlement" or "larceny" component of 11 U.S.C. § 523(a)(4).

The Tenth Circuit has concluded that:

> For purposes of establishing nondischargeabilty under section 523(a)(4), embezzlement is defined under federal common law as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hand it has lawfully come."[42]

On the other hand,

> Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. As distinguished from embezzlement, the original taking of the property must be unlawful. For purposes of section 523(a)(4), a bankruptcy court is not bound by state law definition of larceny but, rather, may follow federal common law which defines larceny as "felonious taking of another's personal property with intent to convert it or deprive the owner of same."[43]

Colorado law has merged larceny, stealing, embezzlement, false pretenses, confidence games, and shoplifting as "theft." Specifically, under state statute:

---

[41]     First Amended Complaint and Jury Demand attached as Exhibit B to the Plaintiff's Motion for Summary Judgment, p. 7, ¶¶ 40-42.

[42]     *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988).

[43]     4 *Collier on Bankruptcy* ¶ 523.10[2], at 523-76-523-77 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2009).

> If any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public monies), false pretenses, confidence games, or shoplifting, that law shall be interpreted as if the word "theft" were substituted therefore; and in the enactment of sections 18-4-401 to 18-4-403 it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleadings and proof of such crimes.[44]

This Court believes that Colorado's theft statute was meant to encompass a spectrum of acquisition crimes, including embezzlement and larceny.[45] Several courts have concluded that, where the crimes of embezzlement, conversion and larceny are consolidated into a single theft statute and the statutory offense of theft is consistent with the federal definition of embezzlement or larceny, issue preclusion may be utilized to except a debt for such offenses.

The Stipulated Judgment, when viewed in the context of those admissions to the allegations of the Fourth Claim for Relief, precludes this Court from relitigating this matter and this Court will grant the Stipulated Judgment full force and effect and determine that the State Court Judgment is not dischargeable under 11 U.S.C. § 523(a)(4).

### C. Stipulated Judgments

In *Nichols v. Board of County Commissions of the County of La Plata, Colorado,*[46] the Tenth Circuit Court of Appeals reviewed Colorado law of issue preclusion. The Tenth Circuit held "[f]or an issue to be actually litigated…'the issue must [have been] submitted for determination and then actually determined by the adjudicatory body."[47] Although the Tenth Circuit found "the Colorado courts have not yet decided whether a settlement agreement and consent decree are 'actually determined by the adjudicatory body' for the purposes of collateral estoppel,"[48] the Tenth Circuit decided "consent judgments ordinarily support claim preclusion but not issue preclusion"[49] and ruled a settlement agreement does not have preclusive effect on any of the issues in controversy in the instant litigation because the issues were not "actually litigated

---

[44] COLO.REV.STAT. § 18-4-403.

[45] *Hucal v. People,* 176 Colo. 529, 535, 493 P.2d 23, 27 (Colo. 1971).

[46] *Nichols v. Board of County Commissioners of the County of La Plata, Colorado*, 506 F.3d 962 (10th Cir. 2007).

[47] *Id.* at 967 (citations omitted)(emphasis in the original).

[48] *Id.* at 968.

[49] *Id.*

16

and necessarily adjudicated" under Colorado's collateral estoppel test. This Court will conduct its own analysis of the issue under Colorado law.

"The Colorado Supreme Court ... relies on the Restatement (Second) of Judgments § 27 (1982) when formulating collateral estoppel principles."[50] The Restatement provides:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.[51]

Hence, for the Stipulation and the Stipulated Judgment to have collateral estoppel effect, the issue to be precluded must have been "actually litigated" in the prior proceeding. The parties dispute whether the elements of the Plaintiff's claims of fraud based on deceit and civil theft were "actually litigated" prior to entry of the Stipulated Judgment. It is undisputed that the Stipulated Judgment did not enter after a trial was had on the issues. *But, the Stipulated Judgment was the result of two years of litigation, a reconsidered and vacated default judgment, mediation through a former judge and with representation of the parties by counsel, and the entry of the Stipulation by the parties.*

The comments to the Restatement are instructive as to whether a stipulation can be considered "actually litigated" for purposes of collateral estoppel:

> An issue is not actually litigated if…it is the subject of a stipulation between the parties. The stipulation may, however, be binding in a subsequent action between the parties if the parties *have manifested an intention to that effect.*[52]

The Restatement also provides the rationale for the rule that a consent judgment[53] is not a judicial determination of any litigated right:

---

[50] *Id.* at 967 (citing *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85-86 & n. 3 (Colo. 1999); *Michaelson v. Michaelson*, 884 P.2d 695, 701 & n. 7 (Colo. 1994); *Bennett College v. United Bank of Denver, Nat. Ass'n*, 799 P.2d 364, 368 (Colo. 1990)).

[51] Restatement (Second) of Judgments § 27.

[52] Restatement (Second) of Judgments § 27 comment (e).

[53] "[A] judgment by consent is based upon a settlement between the parties of the terms, amount, or conditions of the judgment to be entered, and requires a mutual understanding of and concerted action by the parties. A judgment entered upon the stipulation of the parties is a judgment by consent." *Right to appellate review of consent judgments*, American Law Reports, 69 A.L.R. 2d 755 (1960).

17

> The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.[54]

Hence, collateral estoppel *does not* necessarily bind parties to issues originally at issue but later compromised and settled without a trial on the merits because the issue *may not have been actually litigated and determined in the prior proceeding, unless specific language affirmatively points to it.* Consent judgments, "while settling the issue definitively between the parties, normally do not support an invocation of collateral estoppel."[55] "[C]onsent agreements ordinarily are intended to preclude any future litigation on the *claim* presented but are not intended to preclude further litigation on any of the *issues* presented."[56]

For collateral estoppel to apply to a stipulation, the parties must have manifested their intent to do so.[57] It is for the courts to decide whether such intent is present, and courts have

---

[54] Restatement (Second) of Judgments § 27 comment (e).

[55] *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

[56] *Arizona v. California*, 530 U.S. 392, 414 (2000)(this case originated under federal law and the effect of issue preclusion was determined applying federal common law). *See, e.g.*, 4 *Collier on Bankruptcy* ¶ 523.06, at 523-22 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2011).

[57] Judge Nelson of the Supreme Court of Minnesota made this observation with respect to consent judgments, which is insightful, but not controlling on this Court:

> A consent judgment is based wholly on the consent of the parties and there is no judicial inquiry into the facts or the law applicable to the controversy. Moreover, in a consent judgment it is the duty of the court to enter judgment in accordance with the agreement of the parties and the court's authority is limited by the consent or stipulation ... Such a judgment is therefore not a judicial determination of the rights of the parties and does not purport to represent the judgment of the court, but merely records the preexisting agreement of the parties…

*Hentschel v. Smith*, 278 Minn. 86, 86-87, 153 N.W. 2d 199, 201 (Minn. 1967). Further, "parties to a consent judgment generally intend merely to put an end to the litigation at hand, but do not intend the judgment to have binding effect as to the issues raised in collateral, perhaps unforeseen, litigation which may arise in the future…[but] "a contrary result is appropriate in those exceptional situations in which the parties *have manifested their intention that the consent judgment is to have collateral estoppel effect." Id.* (Emphasis added).

come to different conclusions as to what constitutes a manifestation of intent.[58] "Collateral estoppel may only be applied to consent decrees if 'the parties could reasonably have foreseen the conclusive effect of their actions.'"[59]

The parties, here, *after mediation and with assistance of their own counsel*, entered into specific and definitive terms in their Stipulation and in the Stipulated Judgment whereby "Defendants stipulate to the entry of judgment…based on deceit based on fraud…and civil theft…" It is simply disingenuous to contend that the parties did *not intend* this Stipulated Judgment to operate as a final adjudication of these two particular issues–and for that matter the case as a whole.[60] Conversely, if the Defendants were to prevail with their argument that this Stipulated Judgment should not operate as a final adjudication of the State Court Action, likely this Plaintiff could re-assert herein the claims she did not go forward with and to which she stipulated would be dismissed by way of the Stipulation and Stipulated Judgment.

---

[58] *In re Miller*, 307 Fed. Appx. 785 (5th Cir. 2008) (holding intent to preclude can be found by language contained with the stipulated judgment indicating the debt is nondischargeable in bankruptcy); *In re Vollbracht*, 276 Fed. Appx. 360 (5th Cir. 2007) (holding a bankruptcy court may adopt state holdings where the state court consent judgments were 'detailed recitations of the findings upon which they were based.'); *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 990 (7th Cir. 1990) (recognizing the general rule forbidding the application of collateral estoppel to consent judgments especially when the judgment lacks clarity); *Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239 (5th Cir. 1988) (holding that settlement agreements, like consent judgments, are *not* given preclusive effect unless the parties manifest their intent to give them such effect); *Levinson v. U.S.*, 969 F.2d 260, 264 (7th Cir. 1992) (holding the court cannot find intent where the consent judgment fails to mention the cause of action); *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir. 1987) (holding the intent of parties can be inferred from sufficient details contained within the consent judgment indicating the parties understood the consent judgment operated as a final adjudication of the factual issues).

[59] *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (citing *Klingman*, 831 F.2d 1292, 1296 (7th Cir. 1987).

[60] *Bennett Coll. V. United Bank of Denver*, 799 P.2d 364, 368 (Colo. 1990) ("Under certain circumstances a stipulation between parties to central questions of fact and law or a stipulation to questions of fact may render a judgment not 'final' as to those questions, and in a subsequent proceeding collateral estoppel should not prevent the litigation of those questions unless the parties in the original lawsuit intended the questions to be settled as to future actions.").

## V. Conclusion and Order

Based on the above and foregoing, it is, therefore,

ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED; and it is

FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment is DENIED.

DATED: January 13, 2012.

BY THE COURT:

_Sid Brooks_

Sidney B. Brooks
U.S. Bankruptcy Judge